■ MARK H. MCCORMACK, Appellant, v GRUMMAN AMERICAN AVIATION CORPORATION, Respondent. (Action No. 1.) MARK H.

McCORMACK, Appellant, v GRUMMAN AMERICAN AVIATION CORPORATION, Now Known as GULFSTREAM AMERICAN CORPORATION, Respondent. (Action No. 2.) — Order and judgment of the Supreme Court, New York County (Crangle, J., after a bench trial), both entered May 25, 1984, dismissing the complaint in both actions, modified, on the law and the facts, without costs, so as to grant judgment in favor of the plaintiff in action No. 1 and direct an assessment of damages therein, and otherwise affirmed.

Action No. 1 was commenced by plaintiff McCormack to recover a finder's fee resulting from the sale of a corporate jet plane by Grumman American Aviation Corp. (GAAC) (now known as Gulfstream American Corp.). Plaintiff, while visiting Bruce Rappaport in Switzerland, learned that the latter was interested in purchasing a jet aircraft. Plaintiff contacted an acquaintance, Russell Meyer, who at the time served as director, president and chief executive officer of GAAC. Meyer, after consulting with the head of GAAC's sales department, Charles Vogeley, told plaintiff that if the prospective purchaser was one with whom GAAC had not had prior contact, plaintiff would be entitled to a finder's fee. Plaintiff subsequently arranged a meeting between defendant and Rappaport, who had been unknown to GAAC until that time. On May 24, 1974 Meyer summarized the agreement in a letter to Vogeley which stated, in pertinent part, that, "Provided the airplane is sold to Rappaport at the standard export price (currently $3.6 million), and provided there is no extraordinary demonstration expense, then McCormack would receive a fee of at least $50,000."

GAAC does not contest the fact that Meyer was empowered to authorize a finder's fee at the time of plaintiff's presentation of Rappaport as a potential purchaser, or that such an arrangement was actually reached. GAAC does contend, however, that at the time of Meyer's letter to Vogeley evidencing the oral agreement, Meyer had no power or authority to bind GAAC in any way. On May 15, 1974 Meyer had resigned as an officer and director of GAAC. However, Meyer's resignation is not dispositive. As stated by the Court of Appeals: "The Statute of Frauds was designed to guard against the peril of perjury; to prevent the enforcement of unfounded fraudulent claims. But, as Professor Williston observed: 'The Statute of Frauds was not enacted to afford persons a means of evading just obligations; nor was it intended to supply a cloak of immunity to hedging litigants lacking integrity; nor was it adopted to enable defendants to interpose the Statute as a bar to a contract fairly, and admittedly, made' (4 Williston, Contracts [3d ed.], § 567A, pp. 19-20)." (*Cohon & Co. v Russell*, 23 NY2d 569, 574.)

Furthermore, while Meyer was no longer titular head of GAAC on May 24, he had been asked by the chairman of the board of GAAC's parent company to remain on duty to ease the transition to his successor and to memorialize the outstanding business of GAAC in writing. Meyer, therefore, had both express and implied authority to sign the letter of May 24 evidencing the oral agreement between plaintiff and GAAC. (General Obligations Law § 5-701 [a] [10]; see, Cohon & Co. v Russell, supra.)

Accordingly, plaintiff is entitled to judgment in action No. 1 for the reasonable value of his services. Action No. 2 was properly dismissed. The agreement, as evidenced by the letter of May 24, 1974, contemplated a finder's fee payment to plaintiff based upon the sale of a single aircraft to Rappaport. There was insufficient evidence to support plaintiff's contention that the agreement required payment of finder's fees based upon sales subsequent to the initial sale to Rappaport of the aircraft then under consideration. Concur — Murphy, P. J., Ross, Lynch and Milonas, JJ.